IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JEREL R. McELROY                                                    PLAINTIFF

v.                    Civil No. 5:24-CV-05022-TLB-CDC

JOHN OR JANE DOE DETENTION OFFICERS, BCDC;
DETENTION OFFICER D. STAMPS, Benton County Detention Center; and
LEVI FRANKS, BCDC                                             DEFENDANTS

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Jerel R. McElroy has filed this civil rights action under 42 U.S.C. § 1983, alleging that Benton County Detention Center ("BCDC") officials placed him in lockdown and subjected him to punitive conditions of confinement without constitutional due process. (ECF No. 31). Plaintiff proceeds *pro se* and *in forma pauperis* ("IFP"). (ECF No. 6).

Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), U.S. District Judge Timothy L. Brooks referred this case to the undersigned for the purposes of making a report and recommendation on Defendants' Motion for Summary Judgment. (ECF No. 77). For the reasons set forth below, the undersigned recommends that Defendants' Motion for Summary Judgment, (ECF No. 77), be **GRANTED**.

## I.    BACKGROUND[1]

Plaintiff was a pretrial detainee at the BCDC at the time he initiated this action. *See* (ECF No. 1). Accordingly, this Court first reviewed his complaint pursuant to 28 U.S.C. § 1915A(a) prior to service being issued. Upon that review, this Court noted potential legal and factual

---

[1] This Court does not endeavor to describe every docket entry, only those relevant to the Court's consideration of the Motion for Summary Judgment presently before it.

deficiencies with his claims and ordered him to submit an amended complaint.  (ECF No. 3). Upon preservice review of Plaintiff's amended complaint pursuant to 28 U.S.C. § 1915A(a), it was recommended that the following two claims proceed: (1) claims against Deputy David Polack and John and Jane Doe detention officers in their individual capacities for placing him in "lockdown" from November 8, 2021, to December 10, 2021, without due process of law; and (2) the claims against Deputy David Polack and John and Jane Doe detention officers for the allegedly unconstitutional conditions of his confinement in lockdown from November 8, 2021, to December 10, 2021.  (ECF No. 11).  This Court then ordered service of the amended complaint on Deputy David Polack, the only named defendant at the time.  (ECF No. 12).  That order also directed Deputy Polack to identify the names of the John and Jane Doe detention officers who "signed the paperwork" authorizing Plaintiff to be placed on lockdown from November 8, 2021, to December 10, 2021.  *Id.*

After initiating service efforts, Plaintiff filed a motion to further amend the amended complaint.  (ECF No. 25).  Upon review, this Court granted that motion, allowing Plaintiff to amend his amended complaint with further factual detail concerning his claim that Deputy Polack and John and Jane Doe detention officers (in their individual capacities) placed him in lockdown without due process of law and that he was "physically and emotionally abused" during that time. (ECF No. 29).  Plaintiff was directed to submit a Second Amended Complaint asserting those claims, and only those claims.  *Id*.  Plaintiff's motion to amend was denied as futile in all other respects.  *Id*.  The Second Amended Complaint identified Defendant Stamps as the official who signed the paperwork placing him on lockdown from November 8, 2021, to December 10, 2021. (ECF No. 31).  Upon review, the Court ordered that the claims asserted in the Second Amended

Complaint that were previously dismissed be stricken and that the Second Amended Complaint be served on Defendant Stamps.  *Id.*; *see also* (ECF Nos. 32-33).

When efforts to serve Deputy Polack were unsuccessful, this Court ordered Plaintiff to provide an address for service for Deputy Polack, failing which the claims against him would be subject to dismissal for lack of service pursuant to Fed. R. Civ. P. 4(m).  (ECF No. 35).  Service of the Second Amended Complaint on Deputy Polack was ordered at the address Plaintiff provided.  (ECF No. 39).  Defendant Stamps's Answer indicated that Defendant Levi Franks decided Plaintiff's disciplinary action on November 15, 2021.  (ECF No. 43).  Considering this information, the Court also ordered service of the Second Amended Complaint on Defendant Franks and directed that he be added as a defendant. (ECF No. 44).  Service on Deputy Polack was returned unexecuted, and service was subsequently ordered on Deputy Polack at a newly identified potential service address.  (ECF Nos. 46-47).  When the summons was returned unexecuted at this address, this Court entered a report and recommendation for dismissal of Deputy Polack from this action without prejudice for lack of service pursuant to Fed. R. Civ. P. 4(m). (ECF No. 53).  Judge Brooks adopted this recommendation over Plaintiff's objection.  (ECF No. 60).  David Polack was thus terminated as a defendant to this action.

After Defendant Franks filed an Answer to this lawsuit, this Court ordered the identified defendants – Defendants Stamps and Franks – to file a motion for summary judgment on the issue of whether Plaintiff properly exhausted his administrative remedies pursuant to 42 U.S.C. § 1997e(a) before initiating this lawsuit by October 21, 2024, or promptly file a notice saying that the Defendants do not intend to pursue an exhaustion defense at trial.  (ECF No. 51).  On October 8, 2024, Defendants Stamps and Franks filed a notice informing the Court and Plaintiff that they

did not intend to pursue exhaustion as a defense at trial.   (ECF No. 54).   That same day, Plaintiff

filed a Motion to Appoint Counsel, (ECF No. 54), and Motion for Leave to Amend. (ECF No. 56).

On October 11, 2024, Plaintiff filed another Motion to Amend Complaint.   (ECF No. 57).   This

Court later denied all three motions.   (ECF No. 61).

On October 15, 2024, the Court entered an initial scheduling order governing discovery

and requiring a motion for summary judgment on the merits to be filed by March 14, 2025.   (ECF

No. 58).   On March 14, 2025, Defendants filed a Motion to Dismiss and to Stay the Scheduling

Order Deadlines on the grounds that their mail to Plaintiff had been returned as undeliverable and

Plaintiff had not provided any updated contact information.   (ECF No. 63).   That same day, this

Court granted the stay and deferred ruling on the Motion to Dismiss.   (ECF No. 66).   This Court

also directed Plaintiff to respond to Defendants' Motion to Dismiss, failing which this matter

would be subject to dismissal for failure to prosecute and failure to comply with court orders.

(ECF No. 67).   When Plaintiff submitted a notice of change of address but did not respond to

Defendants' Motion to Dismiss as ordered, this Court ordered Plaintiff to show cause why this

matter should not be dismissed for failure to comply with court orders.   (ECF No. 69).   The show

cause response was due by April 22, 2025.   *Id.*   On April 8, 2025, Plaintiff responded to

Defendants' Motion to Dismiss.   (ECF No. 71).   That same day, this Court denied Defendants'

Motion to Dismiss as moot because Plaintiff had provided his updated contact information and

had evinced his intent to continue to prosecute this case.   (ECF No. 72).   The Court also ordered

that Defendants' motion for summary judgment be filed by May 16, 2025.   (ECF No. 72).   On

May 15, 2025, Defendants requested and received an extension of time to submit their motion for

summary judgment.   (ECF Nos. 73 & 74).   On May 16, 2025, Plaintiff submitted a change of

address indicating that he was no longer incarcerated.   (ECF No. 75).   In response, this Court ordered Plaintiff to submit an updated *in forma pauperis* ("IFP") application reflecting his "free world" financial status by June 6, 2025, failing which this matter would be subject to dismissal for failure to comply with court orders.   (ECF No. 76).

On May 23, 2025, Defendants filed a Motion for Summary Judgment, arguing that the Defendants are entitled to qualified immunity because there is no evidence that Plaintiff suffered a constitutional violation, and no evidence Defendants violated Plaintiff's clearly established constitutional rights.   (ECF Nos. 77-79).   Plaintiff was ordered to respond to Defendants' Motion for Summary Judgment by June 17, 2025, and was provided directions on how to respond.   (ECF No. 80).   Defendants later submitted a supplement to their statement of facts, including video of the incident that purportedly gave rise to the disciplinary action at issue here.   (ECF Nos. 89 & 90).   After receiving an extension of time, (ECF Nos. 87-88), Plaintiff filed his response to Defendants' Motion for Summary Judgment, contending that he was placed on "lock down" in violation of his rights.   (ECF No. 91).   The Motion is ripe for decision.

## II.    LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Ward v. Olson*, 939 F. Supp. 2d 956, 961 (D. Minn. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).   A fact is material only when its resolution would affect the outcome of a case. *Anderson*, 477 U.S. at 248.

Further, the moving party bears the initial burden of identifying "those portions of the

record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001).   In response, the nonmoving party "may not rest upon mere denials or allegations but must instead set forth specific facts sufficient to raise a genuine issue for trial."   *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). In considering a summary judgment motion, the court views all the evidence and inferences in the light most favorable to the nonmoving party.   *Anderson*, 477 U.S. at 255.

### III.   FACTS

Plaintiff alleges that while in custody at the BCDC in 2019, Deputy Polack used excessive force against him.  (ECF No. 31).   Approximately three years later, Plaintiff returned to the BCDC following his arrest on a failure to appear warrant. *Id.*   While in custody at the BCDC for the second time, Deputy Polack and John and Jane Doe detention officers allegedly placed him in lockdown "without cause or proper reason."   Second Amended Complaint at 4.   When on lockdown, everything was taken from Plaintiff, including his mat and socks, and he was subjected to "freezing" conditions, and he was "emotionally and physically abused," *Id.* at 6-7.   The following claims remain and are now subject to summary judgment: (1) That Defendants Stamps, Franks, and John and Jane Doe detention officers placed Plaintiff on lockdown from November 8, 2021, to December 10, 2021, without due process of law; and (2) the conditions of Plaintiff's confinement while on "lockdown" violated his constitutional rights under the Fourteenth Amendment.   *See* (ECF No. 31, 32, 53).

### A.    Incident Giving Rise to Disciplinary Proceedings

The following facts are undisputed:[2]   Plaintiff was booked into the BCDC on November

---

[2] Plaintiff's handwritten response in opposition to Defendants' Motion for Summary Judgment is

10, 2021, on a failure to appear warrant.  (ECF No. 79-2 at 1).  He bonded out on December 3, 2021.  *Id.* at 2.  On November 14, 2021, Deputy Polack submitted an incident report saying that on November 13, 2021, Polack observed Plaintiff through the "E101 housing unit window working out on the top tier doing dips from the top rail."  (ECF No. 79-5 at 1).  According to the incident report,[3] Deputy Polack directed Deputy Williams to order Plaintiff to stop working out and to return to the day room.  *Id.*  In response, Plaintiff questioned the order, at which time Deputy Polack directed Deputy Williams to order Plaintiff to step out of the housing unit so that he could discuss the matter with Plaintiff directly.  When Plaintiff stepped out, he started yelling at Deputy Polack.  After Plaintiff acknowledged that he understood Deputy Polack's explanation of the facility rules, Deputy Polack directed Deputy Williams to escort Plaintiff back to his housing unit, but when Plaintiff returned to his housing, Deputy Polack saw "[Plaintiff] make stabbing gestures with an inmate showing frustration."  *Id.*  At this point, Sergeant Keil entered the housing unit and spoke to the inmates about respect and the rules, Defendant Stamps was informed of the situation, and Defendant Stamps spoke to Plaintiff individually about his actions.  *Id.*  After this

---

neither notarized nor sworn under penalty of perjury.  *See* (ECF No. 91).  This Court, therefore, considers Plaintiff's handwritten response as argument, not evidence, and looks to his verified Second Amended Complaint to determine whether any material fact disputes preclude summary judgment.  *See Roberson v. Hayti Police Dept.*, 241 F.3d 992, 994-95 (8th Cir. 2001) (explaining that a plaintiff's verified complaint is the equivalent of an affidavit for the purposes of summary judgment and a complaint signed and dated under penalty of perjury constitutes a verified complaint).

[3] Considering the affidavit of BCDC Lieutenant Brittany Wright, the incident report is admissible as a record of a regularly conducted activity.  *See* Fed. R. Evid. 803(6).  Within that report, Plaintiff's statements are non-hearsay.  *See* Fed. R. Evid. 801(d)(2)(A).  To the extent the incident report contains statements made by Deputy Polack or some third party, the Defendants do not claim that these statements fall under some recognized exception to the rule against hearsay. *See* (ECF No. 78).  This Court, therefore, does not consider these statements for the fact of the matter asserted, but rather for some other purpose, specifically, the effect on the listener.

discussion, Deputy Polack placed Plaintiff on lock down for the following rule violations: A-18 threatening or intimidating any other person.[4]  *Id.*

BCDC surveillance video of the events giving rise to the rule violation shows the following:

At approximately 7:51 pm on November 13, 2021, Plaintiff is on the top of the stairs of housing unit E101, pushing himself up several times with his body weight.   (ECF No. 89-2 at 7:52 pm).   After about a minute, he walks into the control room, at which time a corrections officer, identified by the Defendants as Deputy Polack, speaks to him from the control desk.  *Id.*  The control desk is in the shape of a large hexagon and contains several chairs and monitors.   This area is elevated off the floor, surrounded by walls reaching to the top of the monitors.   Deputy Polack is pointing and gesturing at Plaintiff from behind the control desk, he moves closer to where Plaintiff is standing but does not exit the control desk area.  *Id*.  At approximately 7:53 pm, additional officers run into the control room and circle Plaintiff, who remains standing next to the control desk.  *Id.* at 7:53 pm.   After about one minute, Deputy Polack exits the control desk, stepping down to talk to Plaintiff directly.  *Id.* at 7:54. After about two minutes, Deputy Polack and Plaintiff move towards the door to the housing unit.  *Id.*   At 7:58 pm, Plaintiff re-enters the housing unit.   Deputy Polack, along with an unidentified deputy, continues to stand next to this door, looking into the housing unit where the video shows Plaintiff walking back and forth, gesturing, and hitting one of the tables in the common area.  *Id.*   At approximately 7:59 pm,

---

[4] As Plaintiff points out, Defendants did not include a copy of the BCDC policy describing rule "A-18" in its documents in support of their summary judgment motion.  *See generally* (ECF No. 79-6).   For the reasons described below, however, this omission is not material to the Court's analysis.

8

Plaintiff sits down, at which point a different deputy enters the housing unit and starts talking to the inmates.   During this conversation, Plaintiff is gesturing, pointing, and standing up next to the table.   *Id.* at 8:05 pm.   The conversation continues for another 5 minutes before the deputy exits the housing unit and the inmates return to their activities.   *Id.* at 8:10 pm.   Approximately thirty minutes later, Plaintiff is brought into the control room again and speaks to several deputies, including Defendant Stamps.   *Id.* at 8:58 pm.   Following this conversation, the video shows Plaintiff being moved into the E102 housing unit.   *Id.* at 9:17. He is searched prior to this move and at one point he kicks off his orange slides but then puts them back on. *Id.* at 9:18-9:19. He is wearing a black and white striped jumpsuit when he is escorted to the E102 housing unit.   *Id.* At approximately 9:23 pm, the video shows a deputy exiting the E101 housing unit with a folded mattress, entering the E102 housing unit with the mattress, and delivering it to Plaintiff's cell.   *Id.*

**B.    Plaintiff's Disciplinary Proceedings**

On November 14, 2021, Deputy Polack initiated disciplinary action against Plaintiff for "threatening or intimidating any other person," in violation of Rule "A-18."   (ECF No. 79-5 at 1). The note "refused" appears on the "inmate signed" line.   *Id.* at 3.   A hearing was held on this purported rule violation on November 15, 2021.   Defendant Levi Franks, who was not present during the events giving rise to the rule violation, presided over the hearing, found him guilty, and sentenced him to 20 days lockdown, effective from November 13, 2021, to December 3, 2021. *Id.* at 4.   The form reflects that Plaintiff requested an appeal of these findings on the grounds that "he never threatened anyone."   *Id.*   An "appeal hearing" was held on November 16, 2021, and the decision to place Plaintiff on lockdown was upheld.   *Id.* The form was signed by a disciplinary official but not countersigned by an "approving" official.   *Id.* at 6.   The place for the inmate's

9

signature is noted "refused."   *Id.*

On November 27, 2021, Officer Chance Gregory initiated disciplinary action against Plaintiff for "assault and battery or accessory to battery or extortion" in violation of Rule "A-4" for an incident that occurred that same day. (ECF No. 79-5 at 11).   At the time, Plaintiff was still serving time on "lockdown" for the November 13, 2021, incident.   *Id.*   The disciplinary proceedings following the November 27, 2021, incident are not at issue here.   *See* (ECF No. 31). Suffice to say that following those proceedings, Plaintiff was sentenced to fifteen days lockdown, effective November 27, 2021, to December 12, 2021.   (ECF No. 79-5 at 11).

## C.    Benton County Detention Center Policies and Procedures

The Benton County Sheriff's Office Detention Center Policies and Procedures ("BCDC policies") defines four types of segregation.   (ECF No. 79-6 at 1).   Disciplinary segregation is defined as a "[s]tatus of confinement that entails separation from the general population of the facility for the inmates found in violation of institutional rules, criminal laws or codes, policies, or the reasonable orders of officers and staff."   *Id.*   Prior to placement in disciplinary detention, "[a] due process hearing is conducted, in accordance with facility policy."   *Id.*   If an inmate is found to have violated a jail rule, following a disciplinary due process hearing, [he may] be placed in disciplinary segregation for up to ten [10] days for a minor rules violation or up to thirty [30] days for a major rules violation . . . ."   *Id.* at 4.   An inmate's conditions of confinement in disciplinary segregation "are consistent with those described in the policy discussing locked unit operations." *Id.* at 5.   The Defendants did not include "the policy discussing locked unit operations" as an exhibit in support of their summary judgment motion.   *See generally* (ECF No. 79-6).

BCDC policy provides that:

[a]ll key aspects regarding placement of inmates in *disciplinary segregation* are documented and include the following:

1.    Completed Internal Incident Report providing an accurate account of the details of the violation resulting in disciplinary segregation;
   - Incident report will be completed before the end of shift it occurred on or was found on;
   - Incidents involving Use of Force will be completed before the end of shift it occurred on;
   - Incident reports must be approved
2.    Signed disciplinary form;
   - If the inmate refuses to sign the form, notate on the form;
3.    Commissary Inventory Form;
   - If the inmate does not have commissary items, notate on the form and attach to the disciplinary paperwork

(ECF No. 79-6 at 5).

The BCDC policy on disciplinary hearings provides:

**Disciplinary Hearings:**

The reporting of rule and regulation violations is the responsibility of every employee, regardless of work assignment. Any violation of the rules and regulations that the deputy deems warrants more than a verbal reprimand will be documented and the disciplinary process begins:

1.    The deputy notifies the inmate(s) they are being placed on *administrative segregation,* pending a disciplinary hearing, and notifies the inmate(s) of the misconduct and disciplinary infractions.
2.    The deputy will prepare a disciplinary form and serve this to the inmate. The deputy will sign and date the form and retain a signature from the inmate, informing the inmate by signing the form they are not admitting guilt, but acknowledging they have been served. In the event the inmate refuses to sign the form, the deputy will notate this on the form.
3.    No sooner than twenty-four (24) business hours of the incident and no later than seventy-two [72] hours of the incident (excluding weekends and holidays), the Disciplinary Sergeant, or designee, will review the documentation and relevant evidence related to the alleged misconduct. The Disciplinary Sergeant will speak with the

11

inmate and make a determination of guilty/not guilty.

4.  In the event the Disciplinary Sergeant finds the inmate not guilty, the inmate will be allowed to return to their prior housing unit, if possible. The Disciplinary Sergeant will notify the charging deputy, or their shift supervisor, if the disciplinary is overturned for any reason.

5.  In the event the Disciplinary Sergeant finds the inmate guilty, they will notify the inmate of the punishment imposed. At this time, the inmate will be subject to losing privileges they would have been afforded if not on *disciplinary segregation.* The Disciplinary Sergeant will advise the inmate they have the right to appeal their decision to a higher authority.

6.  In the event the inmate chooses to appeal the Disciplinary Sergeant's decision, the Jail Lieutenant, or designee, will review the finding and administer an appeal hearing no sooner than twenty-four (24) business hours of the initial disciplinary hearing and no later than seventy-two [72] business hours of the incident.

7.  The Jail Captain or designee will review all disciplinary action taken. Copies of all reports will be placed in the inmate's OCA file.

*Id.* at 6.

Finally, according to BCDC policy, "[i]ncidents of misconduct while in *disciplinary segregation* may result in additional *disciplinary segregation* time being imposed." *Id.*

Notably, Plaintiff's response in opposition to Defendants' Motion for Summary Judgment includes BCDC Policy Number 6.01 on "inmate discipline." (ECF No. 91 at 18-21). That policy further outlines the "formal hearing process." Namely, according to Policy 6.01, "[i]f a CR/DEPUTY has reasonable belief that an infraction has occurred, and that *formal disciplinary action* is warranted, a hearing or disciplinary action is scheduled within seventy-two [72] hours." *Id.* at 20. "During the hearing the C/R DEPUTY hears the facts of the alleged violation, weighs the evidence, and makes a ruling as to the disposition of the case. An inmate charged with a rule violation may have the opportunity [but is not required] to be present, make a statement, and

present documentary evidence.  The C/R DEPUTY has the discretion not to allow inmates to attend or participate in a hearing if disruptive, violent prone, or otherwise uncooperative or lacking respect for the process." *Id.* at 20.  Additionally, pursuant to policy, "[t]he inmate may request witnesses when such witnesses are reasonably available . . . ."[5] *Id.*  It is unclear from the record whether Plaintiff was present at his disciplinary hearing or if he requested witnesses.

## IV.    ANALYSIS

The undersigned turns to the two claims on summary judgment: (1) That Defendants Stamps, Franks, and John and Jane Doe detention officers placed Plaintiff on lockdown from November 8, 2021, to December 10, 2021, without due process of law; and (2) That the conditions of Plaintiff's confinement while on "lockdown" violated his constitutional rights under the Fourteenth Amendment.

Defendants contend that they are entitled to qualified immunity.  Officials are entitled to qualified immunity in § 1983 actions unless "they violated a federal 'statutory or constitutional right that was clearly established at the time.'" *Webster v. Westlake*, 41 F.4th 1004, 1009 (8th Cir. 2022) (quoting *City & Cty. of S.F. v. Sheehan*, 575 U.S. 600, 611 (2015)).  "To decide whether an official is entitled to qualified immunity, [courts] conduct a two-step inquiry: (1) whether the facts, viewed in the light most favorable to plaintiff, demonstrate a constitutional or statutory deprivation; and (2) whether the right was clearly established at the time." *Id.* at 1009-10 (citing *Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015)).  The court "may decide which

---

[5] This excerpt appears to come from page 3 of 6 of BCDC Policy Number 6.01.  *See* (ECF No. 91 at 20.  Neither party provided the Court with all six pages of this policy—indeed, page 4 appears to be missing.  Accordingly, there are no facts in the record establishing what (if any) other conditions must be met for an inmate to present witnesses at his disciplinary hearing.

step to address first." *Id.* (citing *Morgan v. Robinson*, 920 F.3d 521, 523 (8th Cir. 2019) (en banc)).   In this case, the undisputed material facts show that Defendants Stamps and Franks should be entitled to qualified immunity.

## A.    Due Process

Under the Due Process Clause of the Fourteenth Amendment, "[p]retrial detainees are presumed innocent and may not be punished." *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).   There are two ways to determine whether conditions of confinement rise to the level of punishment. *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 907 (8th Cir. 2020).   First, "a plaintiff could show that the conditions were intentionally punitive." *Id.*   "Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.*   (citing *Wolfish*, 441 U.S. at 538-39).   "Not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996).   "[T]here is a *de minimis* level of imposition with which the Constitution is not concerned." *Id.*   "In considering whether the conditions of pretrial detention are unconstitutionally punitive, [courts] review the totality of the circumstances of a pretrial detainee's confinement." *Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2010).

Plaintiff contends that he was placed in "lockdown" without due process of law. Defendants respond that Plaintiff was afforded a hearing where Defendant Franks, acting as the hearing officer, found Plaintiff guilty of the rule violation after considering the evidence. *See* (ECF No. 79 at 2).   After being found guilty of this violation, Plaintiff was sentenced to 20 days

14

in lockdown.   (ECF No. 79-5 at 4).   Plaintiff says that he was under 23-hour lockdown, and "stripped" of everything, like mats and socks, "under freezing conditions without sheets or blankets for a period of time throughout the day." (ECF No. 31 at 9).   According to BCDC policies, "the basic living conditions and services in the *disciplinary segregation* unit are consistent with those described in the policy discussing locked unit operations."   (ECF No. 79-6 at 5).  While the Defendants did not include the BCDC policy discussing "locked unit operations," the policy provided states that, "inmates in *disciplinary* segregation are subject to more stringent personal property, reading material limitations, communications such as visitation and telephone privileges, programs, reading materials, and activities and commissary privileges.   Showers will be regulated, per state and federal guidelines to once every three [3] days."   *Id.*   There are no facts in the summary judgment record establishing to what extent (or even whether) Plaintiff was subjected to these limitations.

### 1.  Lockdown

The first question for the Court to decide is whether the decision to move Plaintiff from his housing unit to "lockdown" violated Plaintiff's due process rights.   The Court concludes that it did not.

"If a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees."   *Dale v. Brott*, Case No. 12-CV-383 (PJS/JSM), 2013 WL 12074952, at *12 (D. Minn. July 23, 2013) (quoting *Bell*, 441 U.S. at 539), *R&R adopted by* 2013 WL 12074953 (D. Minn. Sept. 5, 2013). But, as noted above, "if a particular condition or restriction of pretrial detention is reasonably

15

related to a legitimate governmental objective, it does not, without more, amount to 'punishment'." *Id.* (quoting *Bell*, 441 U.S. at 539). Further, "when courts consider whether jail conditions amount to punishment, they must bear in mind that jail officials have 'legitimate interests that stem from [their] need to manage [their] facility,' which 'may require administrative measures that go beyond those that are, strictly speaking, necessary to ensure that the detainee shows up at trial.'" *Id.* (quoting *Bell*, 441 U.S. at 540). Accordingly, "the effective management of the detention facility . . . is a valid objective that may justify the imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Id.* (quoting *Bell*, 441 U.S. at 540).

In this case, the uncontroverted video evidence shows that after Deputy Polack told Plaintiff to stop using the railing in the housing pod to work out, Plaintiff returned to his housing pod and proceeded to pace around in the day area, pointing, and gesturing. While it is not clear what gestures Plaintiff was making with his hands, the surveillance video shows that Plaintiff's conduct prompted a deputy to enter the housing pod to discuss the detention center rules. On this record, therefore, BCDC officials' decision to remove Plaintiff from the housing pod and house him in a different pod was *not* "arbitrary and purposeless." Rather, given the circumstances, the decision to move Plaintiff to a different housing unit falls squarely within the wide-ranging deference afforded to jail officials to "adopt[] and execut[e] policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell*, 441 U.S. at 547. Put differently, the record shows that the decision to move Plaintiff was not intended to *punish* Plaintiff but to maintain order in the facility. *See Dale*, 2013 WL 12074952 at *12 (pretrial detainee not entitled to a due process hearing before being assigned

to a new unit because move was made for "administrative/security reasons").   Because Plaintiff did not establish that the move violated his *constitutional* rights, Defendants should therefore be entitled to qualified immunity with respect to this claim.

### 2.  Conditions of Confinement

Turning to the conditions of confinement Plaintiff experienced while in "lockdown," even if those conditions were punitive (and the Court is unconvinced they were), it is not clearly established that the process Plaintiff received was constitutionally deficient.

First, the Court is not convinced that the conditions Plaintiff experienced in "lockdown" constitute the type of "punishment" that requires due process protections.   Although the BCDC policy explains that pretrial inmates in "disciplinary segregation" are subject to limitations in their access to reading materials, programs, the telephone, visitation and commissary privileges, there is nothing describing the extent to which an inmate's access is so limited.   Further (and more to the point), there is nothing in the record suggesting that *Plaintiff* was subject to any of these limitations.   Instead, Plaintiff claims that he was subjected to "freezing conditions," and "locked down" for 23 hours with restricted access to his mat, sheets, blanket, and socks.   *See* (ECF No. 31).

Under the Fourteenth Amendment, pretrial detainees "are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." *Stickley v. Byrd*, 703 F.3d 421, 423 (8th Cir. 2013) (quoting *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012)).   But not every deprivation rises to the level of punishment under the due process clause.   *See Green v. Baron*, 879 F.2d 305, 310 (8th Cir. 1989).   In this case, Plaintiff asserts (and Defendants fails to assert any facts to dispute) that he was in a cold cell with restricted

access to his mat, sheets, blanket, and socks for 20 days following the November 13, 2021, events giving rise to his disciplinary proceedings. But there are no facts in the record suggesting that he had *no* access to his mat, bedding, or socks during this timeframe, nor are there any facts suggesting that he did not have access to any personal hygiene items or that he was exposed to unsanitary conditions. Certainly, moreover, Plaintiff does not point to any case—controlling or otherwise— that places Plaintiff's right to be free from these conditions (absent Due Process protections) beyond debate. *See Thurmond v. Andrews*, 972 F.3d 1007, 1012 (8th Cir. 2020) (To define a "clearly established right . . . there need not be a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.") (internal citations and quotations omitted) (cleaned up).

Second, even if it were clearly established that these conditions qualify as "punitive," it is undisputed that Plaintiff was afforded a hearing. Defendants assert that this hearing, consistent with policy, involved Defendant Franks reviewing the incident report and speaking with Plaintiff, who purportedly said that "he never threatened anyone." *See* (ECF No. 79 at 2); *see also* (ECF No. 79-5, p. 4). To the extent that Plaintiff claims that this process was inconsistent with BCDC policy, a violation of policy does not establish a constitutional violation. *See Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations."). Further, to the extent Plaintiff contends that the procedures he received were constitutionally deficient, he again fails to point to any clearly established law that would not only support his assertion but also put any reasonable official on notice that the constitution required his hearing to include more robust procedures. By contrast, it is undisputed that Plaintiff received the "fundamental requisite[s]" of

18

due process—notice and a right to be heard." *Senty-Haugen v. Goodno*, 462 F.3d 876, 888 (8th Cir. 2006) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)). Accordingly, the Defendants should be entitled to summary judgment with respect to this claim as well.

## B.    Retaliation

While not explicitly asserted as a separate claim, Plaintiff's Second Amended Complaint contends that Deputy Polack placed him in lockdown due to a "personal ulterior motive" he had against Plaintiff dating back to an excessive force incident that purportedly occurred in October 2019.   (ECF No. 31 at 4).   Defendants construe these allegations as a First Amendment retaliation claim, arguing that the undisputed material facts show that they are entitled to summary judgment on this claim, as well.   This Court agrees.

"An inmate may maintain a cause of action for retaliatory discipline under 42 U.S.C. § 1983 where a prison official files disciplinary charges in retaliation for an inmate's exercise of constitutional rights." *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989)).   But a claim for retaliation fails if "the alleged retaliatory conduct violations were issued for the actual violation of a prison rule." *Id.* (citing *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990)).   Accordingly, "a defendant may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." *Id.*

In this case, the Defendants have met that standard.   The undisputed facts show that Deputy Polack charged Plaintiff with a violation of jail rules, and Plaintiff was provided notice of that violation, and an opportunity to be heard. *See* (ECF No. 79-5 at 2-6).   Following that

hearing, he was found guilty of the violation. *Id.* This finding constitutes "some evidence" that Plaintiff violated the jail's rules, thereby foreclosing any retaliation claim. *Hartsfield*, 511 F.3d at 831. This Court therefore agrees that Defendants are entitled to summary judgment on Plaintiff's retaliation claim, as well.

For these reasons, Defendants' Motion for Summary Judgment should be granted and the claims against them dismissed with prejudice.

**C.    John and Jane Doe Detention Officers**

One final housekeeping matter requires some discussion: Plaintiff's Second Amended Complaint identifies "Jane or John Doe" defendants. (ECF No. 31). Plaintiff asserts the following two claims against these unnamed defendants: (1) "Mr. Polack and said Jane and John Doe officers assaulted me back in October 2019 and had a personal ulterior motive when seen me," (ECF No. 31 at 4 & 6, 7) and (2) "On or around Nov. 8, 2021 – December 10, 2021, I was booked into Benton County Detention Center . . . [w]hen I arrived John or Jane Doe (Detention Officers) along with David Polack placed me on lockdown (segregation) signing papers for lockdown without cause or proper reason violating due process of law," *id.* at 9.

As a threshold matter, following the Court's preservice review of Plaintiff's amended complaint pursuant to 28 U.S.C. § 1915A(a), this Court recommended that Plaintiff's claims related to the November 2019 excessive force incident be dismissed as time barred. *See* (ECF No. 11) (citing *Miller v. Norris*, 247 F.3d 767, 739 (8th Cir. 2001 (Arkansas 3-year personal injury statute of limitations applies to § 1983 actions)). Those recommendations were adopted without objection. (ECF No. 16). This Court subsequently denied as futile Plaintiff's request to further amend his complaint to add a claim against Sheriff Shawn Holloway related to this 2019 incident.

(ECF No. 61).    To the extent that Plaintiff endeavors to reassert claims against John and Jane Doe defendants related to the 2019 excessive force incident these claims are time barred because the statute of limitations to bring § 1983 claims in Arkansas is 3 years, and 3 years has elapsed since the excessive force incident allegedly occurred. *See* 28 U.S.C. § 1915A(a).

Second, to the extent that Plaintiff asserts that the John and Jane Doe defendants retaliated against him by placing him in lockdown on or about November 13, 2021, as described above, because there is "some evidence" in the record that Plaintiff committed a disciplinary violation, Plaintiff's retaliation claim is without merit and therefore should be dismissed with prejudice.

Finally, with respect to any remaining claims against the John and Jane Doe defendants, Plaintiff has not requested to amend his pleadings with the names of these defendants even though the deadline for the parties to complete discovery was February 12, 2025, and the deadline for the parties to request to amend their pleadings was January 13, 2025.    Because these defendants remain unidentified and no further effort has been made to identify them, any remaining claims against them should be dismissed without prejudice.

## CONCLUSION

Accordingly, for the reasons discussed above, it is hereby **RECOMMENDED THAT**,

(1)    The Motion for Summary Judgment by Defendants Stamps and Franks (ECF No. 77) be **GRANTED** and the claims against them be **DISMISSED WITH PREJUDICE.**

(2)    The claims against the John and Jane Doe Defendants should be dismissed as follows:

a.    The claims against them for their purported involvement in the 2019 excessive force incident should be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C.

§ 1915A(a).

b.      The claims against the John and Jane Doe Defendants for purportedly retaliating against Plaintiff by placing him on "lock down" on or about November 13, 2021, be **DISMISSED WITH PREJUDICE;** and

c.      Any other claims against the John and Jane Doe Defendants be **DISMISSED WITHOUT PREJUDICE.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**STATUS OF REFERRAL: No longer referred.**

**RECOMMENDED** this 4th day of September 2025.

*/s/ Christy Comstock*

CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE

22